**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

_____
)
CATFISH FARMERS OF AMERICA, *et al.*,)
                    Plaintiffs,    )
          v.               )        Court No. 24-00126
                        )        Proprietary Information Removed In
UNITED STATES,            )        Brackets on Pages 5, 11-12, 14-19
                Defendant.   )        PUBLIC VERSION
_____)


**DEFENDANT'S RESPONSE TO PLAINTFFS' RULE 56.2
<u>MOTION FOR JUDGMENT UPON THE AGENCY RECORD</u>**


BRETT A. SHUMATE
Acting Assistant Attorney General


PATRICIA M. MCCARTHY
Director


REGINALD T. BLADES, JR.
Assistant Director


OF COUNSEL:
K. GARRETT KAYS
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
  Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230

KARA M. WESTERCAMP
Senior Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-7571
Email: kara.m.westercamp@usdoj.gov


February 12, 2025                  Attorneys for Defendant

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

STATEMENT PURSUANT TO RULE 56.2 ................................................................... 2

    I.    The Administrative Determination Under Review ................................. 2

    II.   Issue Presented for Review ...................................................................... 2

STATEMENT OF FACTS ........................................................................................ 2

    I.    Initiation Of NSR And Preliminary Determination ................................. 2

    II.   Final Determination .................................................................................. 4

SUMMARY OF THE ARGUMENT ........................................................................ 7

ARGUMENT ............................................................................................................ 8

    I.    Standard Of Review ................................................................................. 8

    II.   Commerce Properly Determined That Co May's Single Sale Was Bona Fide ....... 9

        A.   Legal Framework ......................................................................... 9

        B.   Substantial Evidence Supports Commerce's Finding That Co May's Sale Was Bona Fide .................................................. 11

        C.   CFA's Various Arguments Are Meritless ................................... 11

            1.   Substantial Evidence Supports Commerce's Determination Regarding The Typicality Of Co May's Price ............................. 12

            2.   Substantial Evidence Supports Commerce's Conclusion Regarding The Profitability Of Resales ....................................... 14

            3.   Substantial Evidence Supports Commerce's Conclusion Regarding The Relationship Between Co May's Customer And The Resale Customers ........................................................... 17

CONCLUSION .......................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

## <u>CASES</u>

*Allied Tube and Conduit Corp. v. United States,*
31 C.I.T. 1090 (2007).................................................................................................. 10

*Atl. Sugar, Ltd. v. United States,*
744 F.2d 1556 (Fed. Cir. 1984) ..................................................................................... 9

*Canadian Solar Inc. v. United States,*
23 F. 4th 1372 (Fed. Cir. 2022) ................................................................................. 8, 9

*Consolo v. Fed. Mar. Comm'n,*
383 U.S. 607 (1966) ....................................................................................................... 9

*Corus Staal BV v. United States,*
502 F.3d 1370 (Fed. Cir. 2007) ............................................................................. 17, 18

*Dalian Hualing Wood Co., Ltd. v. United States,*
675 F. Supp. 3d 1294 (Ct. Int'l Trade 2023) ...............................................................11

*Fujitsu Gen. Ltd. v. United States,*
88 F.3d 1034 (Fed. Cir. 1996) ....................................................................................... 8

*Hebei New Donghua Amino Acid Co. v. United States,*
374 F. Supp. 2d 1333 (Ct. Int'l Trade 2005) ................................................................ 9

*Itochu Bldg. Prods. v. United States,*
733 F.3d 1140 (Fed. Cir. 2013) ................................................................................... 18

*Jinxiang Yuanxin Import & Export Co., Ltd. v. United States,*
71 F. Supp. 3d 1338 (Ct. Int'l Trade 2015) .......................................................... 10, 16

*Nippon Steel Corp. v. United States,*
458 F.3d 1345 (Fed. Cir. 2006) ..................................................................................... 9

*Novolipetsk Steel Pub. Joint Stock Co. v. United States,*
483 F. Supp. 3d 1281 (Ct. Int'l Trade 2020) ...............................................................11

*Rhone Poulenc, Inc. v. United States,*
899 F.2d 1185 (Fed. Cir. 1990) ................................................................................... 17

*Shandong Rongxin Imp. & Exp. Co. v. United States,*
203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017) ............................................................... 18

*Shijiazhuang Goodman Trading Co., Ltd. v. United States*,
    172 F. Supp. 3d 1363 (Ct. Int'l Trade 2016) .................................................. 13

*Smith-Corona Grp. v. United States*,
    713 F.2d 1568 (Fed. Cir. 1983) ...................................................................... 16

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009) ......................................................................................... 8

*Tianjin Tiancheng Pharma. Co. v. United States*,
    366 F. Supp. 2d 1246 (Ct. Int'l Trade 2005) ............................................ 9, 10, 13

*Windmill Int'l PTE Ltd. v. United States*,
    193 F. Supp. 2d 1301 (Ct. Int'l Trade 2002) ...................................................10, 11

*Zhejiang Amerisun Technology Co., Ltd., v. United States*,
    687 F. Supp. 3d 1282 (Ct. Int'l Trade 2024) .................................................. 19


**STATUTES**
19 U.S.C. § 1516a(b)(1)(B) ..................................................................................... 8
19 U.S.C. § 1675(a)(2)(B)(iv)......................................................................... passim
19 U.S.C. § 1677m(a) ........................................................................................... 15

**REGULATIONS**
19 C.F.R. § 351.309(c)(2) ..................................................................................... 17


**ADMINISTRTIVE DETERMINATIONS**

*Xanthan Gum from the People's Republic of China: Rescission of 2014-2015 Antidumping Duty New Shipper Review*,
    81 Fed. Reg. 56,586 (Dep't of Commerce Aug. 22, 2016) ............................... 14, 15

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*,
    68 Fed. Reg. 47,909 (Dep't of Commerce Aug. 12, 2003) ...................................... 2

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Initiation of Antidumping Duty New Shipper Review*,
    88 Fed. Reg. 18,520 (Dep't of Commerce Mar. 29, 2023)....................................... 2

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Preliminary Results of New Shipper Review; 2022-2023*;
    89 Fed. Reg. 5,862 (Dep't of Commerce Jan. 30, 2024)....................................3, 11

*Certain Fish Fillets from the Socialist Republic of Vietnam*,
    89 Fed. Reg. 53,043 (Dep't of Commerce June 25, 2024)....................................... 2

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:    THE HONORABLE JANE A. RESTANI, SENIOR JUDGE**

| | |
|---|---|
| _____ ) | |
| CATFISH FARMERS OF AMERICA, *et al.*,) | |
| Plaintiffs,    ) | |
| v.    ) | Court No. 24-00126 |
| ) | Proprietary Information Removed In |
| UNITED STATES,    ) | Brackets on Pages 5, 11-12, 14-19 |
| Defendant.    ) | |
| _____ ) | |

**DEFENDANT'S RESPONSE TO PLAINTFFS' RULE 56.2**
**<u>MOTION FOR JUDGMENT UPON THE AGENCY RECORD</u>**

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiffs, Catfish Farmers of America and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc. (collectively, CFA), ECF No. 18.  CFA challenges certain aspects of the final results of the U.S. Department of Commerce's (Commerce) 2022-2023 new shipper review (NSR) of the antidumping duty order covering certain frozen fish fillets from the Socialist Republic of Vietnam.  Specifically, CFA challenges Commerce's finding that the single U.S. sale of Co May Import-Export Company Limited's (Co May) was *bona fide*.

As we explain below, Commerce's determination is supported by substantial evidence and is in accordance with law.

## STATEMENT PURSUANT TO RULE 56.2

### I.    The Administrative Determination Under Review

CFA challenges the final results of the NSR of the antidumping duty order covering certain frozen fish fillets from Vietnam.  *See Certain Fish Fillets from the Socialist Republic of Vietnam*, 89 Fed. Reg. 53,043 (Dep't of Commerce June 25, 2024) (final results of antidumping duty new shipper rev.; 2022-2023) (Final Results) (P.R. 216),[1] and the accompanying Issues and Decision Memorandum (Dep't of Commerce June 14, 2024) (IDM) (P.R. 211).  The period covered by the administrative review of this order is August 1, 2021, through July 31, 2022.

### II.    Issue Presented for Review

Whether Commerce's finding that Co May had a *bona fide* sale of subject merchandise, for purposes of the new shipper review, is supported by substantial evidence and is in accordance with law.

## STATEMENT OF FACTS

### I.    Initiation Of NSR And Preliminary Determination

Since August 2003, Commerce has been administering the Order covering fish fillets from Vietnam.  *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 68 Fed. Reg. 47,909 (Dep't of Commerce Aug. 12, 2003) (Order).  On March 23, 2023, Commerce initiated a NSR based on a timely request from Co May.  *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Initiation of Antidumping Duty New Shipper Review*, 88 Fed. Reg. 18,520 (Dep't of Commerce Mar. 29, 2023) (P.R. 13); Co May Request for NSR (Feb. 14, 2023) (P.R. 1).

---

[1]  Citations to the public record (P.R.) and confidential record (C.R.) refer to the record of the underlying administrative review.

On January 30, 2024, Commerce published its preliminary results of the NSR. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Preliminary Results of New Shipper Review; 2022-2023*; 89 Fed. Reg. 5,862 (Dep't of Commerce Jan. 30, 2024) (P.R. 185) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 179). In the preliminary results, Commerce found that (1) Co May's sale of subject merchandise during the period of review (POR) was *bona fide*, and (2) Co May did not make sales of subject merchandise at prices below normal value. *See* PDM at 1.

Commerce, in determining the *bona fide* nature of Co May's sale, found that (1) the timing of the sales does not indicate that the sale might not be *bona fide*; (2) record evidence indicates that the price and quantity of the sale are commercially reasonable; (3) there is no record evidence demonstrating that Co May incurred any extraordinary expenses arising from the transactions; (4) Co May's unaffiliated U.S. customer provided documentation demonstrating that it potentially made a profit on the resale of subject merchandise to unaffiliated U.S. customers; and (5) record evidence indicates that the sale was made between Co May and its unaffiliated U.S. customer at arm's length. *See id.* at 4. Therefore, Commerce preliminarily found that "Co May's sale of subject merchandise to the United States was *bona fide* for the purposes of this NSR." *Id.* Commerce also preliminarily found that Co May did not make sales of subject merchandise at prices below normal value. *See id.* at 1.

Commerce timely received a case brief from CFA, arguing that Commerce should rescind the review with respect to Co May because it did not have a *bona fide* sale during the POR. *See* CFA Admin. Case Br. (May 17, 2024) (P.R. 204; C.R. 405). Co May timely responded in a rebuttal brief and explained that CFA's unpersuasive arguments were primarily based on CFA's disagreement with Commerce's data collection and how Co May's unaffiliated

customer reported expenses.  *See* Co May Rebuttal Br. (May 22, 2024) (P.R. 205; C.R. 406).

**II.    Final Determination**

On June 25, 2024, Commerce published the final determination.  *See* IDM.  In the final determination, Commerce explained that, after reviewing the parties' comments and based on verification findings, Commerce made some margin recalculations.  *See id.* at 3.  Specifically, pursuant to verification findings, Commerce determined (1) that it would exclude fresh fish organs from Co May's by-product offset, (2) that it would adjust the fish head and fat by-products component of Co May's by-product offset to reflect only the portion attributable to the merchandise under consideration, and (3) that it would adjust Co May's domestic inland freight movement expenses and factor of production (FOP) freight distances.  *Id.*  In its final determination, Commerce continued to find that, based on the totality of the circumstances and the factors listed in 19 U.S.C. § 1675(a)(2)(B)(iv), Co May had a *bona fide* sale of subject merchandise during the period of review (POR) August 1, 2022, through January 31, 2023.  *See generally* IDM.

Commerce also addressed CFA's myriad arguments and found them unpersuasive.  *See id.* at 4-11.  First, Commerce disagreed with CFA's assertion that the sale was not *bona fide* because "the resale of the merchandise by Co May's customer was not made at a profit once accounting for the cash deposit paid for the entry."  *Id.* at 5.  Commerce explained that such an analysis was inappropriate and CFA "cite no cases in support of this position."  *Id.*

Commerce addressed CFA's "series of arguments about supposedly missing expenses associated with the calculation of the reported resale profit," and that "Co May's unaffiliated customer made inconsistent claims regarding marine insurance."  *Id.* at 5-6.  Commerce found that CFA's cites to the marine insurance were not inconsistent and there was "no basis" for CFA's

4

"claim that the customer omitted material expenses from its profit calculation." *Id.* at 6.

Relatedly, Commerce acknowledged that Co May's customer, [█████████████████],

accounted for selling, general and administrative (SG&A) expenses, but that the expenses were

not itemized. *Id.* Commerce explained that it did not request the unaffiliated customer to

itemize the expenses "nor did {Commerce} require it to provide more detailed information." *Id.*

Also, Commerce disagreed with CFA's assertion that "without an actual reconciliation to the

unaffiliated U.S. customer's financial statements, it is not possible to conclude that the customer

included all expenses related to the resale of subject merchandise." *Id.* Commerce explained

that there was "no basis to conclude the customer failed to report any of the expenses associated

with its resale of Co May's fish," and, again, Commerce had not asked for the "U.S. customer to

provide such a reconciliation in {Commerce's} request for information." *Id.*

 Second, Commerce criticized CFA's analysis of an arm's length sale. *Id.* at 7. Commerce

explained that the analysis of whether a sale is *bona fide* focuses on whether the sales "*of an*

*exporter or producer* made during the period covered by the review were *bona fide* by

considering various factors, including whether *such sales* were made on an arm's length basis."

*Id.* (cleaned up and emphasis in original). Commerce explained that "there is nothing on the

record that indicates affiliation between Co May and its U.S. customer, and no party argues

otherwise." *Id.* But CFA focused, instead, on "the arm's-length nature of the *resale* transaction,

*i.e.*, whether Co May's unaffiliated customer and its own downstream customers are affiliated."

*Id.* (emphasis added). Commerce addressed CFA's arguments that Co May's unaffiliated

customer misrepresented its relationship with its resale customers, because two pieces of factual

information could suggest that the resale customers were affiliated. *Id.* Commerce determined

that "neither the information regarding ownership nor the identified addresses compel a

modification" to finding that the U.S. customer made a profit on the resale of Co May's fish. *Id.* at 7-8.

Third, Commerce considered and rejected CFA's arguments that Commerce had failed to consider all the relevant factors in its analysis as to whether the sales "are, or are not, likely to be typical for the exporter." *Id.* at 8. Although CFA framed Co May's sale as a "sample sale," Commerce found that "the fact that Co May was a new supplier to the customer does not make the sale a sample, within the normal meaning of the term; indeed, the facts surrounding this sale indicate otherwise." *Id.* Not only was the sale for consideration, but Commerce verified that it was "a substantial quantity," which "stands in contrast to transactions which Commerce has accepted as sample sales." *Id.*

Next, Commerce rejected CFA's argument that the sale was unrepresentative of Co May's normal commercial practices and was not representative of its future sales practices. *Id.* at 8-9. Commerce explained that "there is no requirement that the U.S. sales price must be the same as a company's price for its sales to other markets; indeed, if this were true, dumping could not exist." *Id.* at 8. It was also "plausible that different markets have different price points depending on differing market conditions." *Id.* at 8-9. Commerce specifically found Co May's price to be "commercially reasonable, as it fell in the center of the distribution of the U.S. prices of the mandatory respondents." *Id.* at 9. Further, Commerce found the sale to be typical because "Co May's sales quantities are in line {with} what the other mandatory respondents reported in their U.S. sales databases, *i.e.*, several metric tons, which is a large volume of frozen fish fillets." *Id.*

Commerce also rejected CFA's argument that the sale was not *bona fide* because this was the only sale of this particular control number (CONNUM) and Co May did not make any

6

additional sales after the POR. *Id.* Commerce explained that it verified that Co May "sold very similar CONNUMs in the ordinary course of its business" and that the specific CONNUM was "not unique, as both of the respondents in an adjacent POR also sold the same CONNUM in substantial volumes." *Id.*

Finally, Commerce considered CFA's various procedural arguments about collecting information in the case and found them meritless. *Id.* at 9-10. Although Co May did not initially provide responses to Importer-Specific Questions, Commerce explained that Co May provided the information in a response to a supplemental questionnaire. *Id.* Co May explained that "it was unable to provide complete responses to certain questions because the information was in the possession of its unaffiliated U.S. customer that, at the time, expressed unwillingness to assist Co May in participating in this review." *Id.* at 10. After the preliminary results, Commerce determined to issue a final supplemental questionnaire for Co May to explain how the sale was sold at a profit to the U.S. customer, and both Co May and its customer provided responses. *Id.* Commerce explained that "this is not an inappropriate procedural step, given that Commerce has the authority to request any person to submit factual information at any time during a proceeding." *Id.*

Thus, Commerce considered that the "totality of the circumstances surrounding Co May's sale of subject merchandise during the POR," supported a finding that the "sale underlying this NSR was made on a *bona fide* basis." *Id.* at 11.

## **SUMMARY OF THE ARGUMENT**

Commerce's finding that Co May's single sale was *bona fide* per the NSR is supported by substantial evidence and in accordance with law.

7

First, CFA argues that Commerce did not adequately explain or support its conclusion that Co May's sale was typical, Co May's goods were resold at profit, and there was no affiliation between Co May's unaffiliated customer and its resale customers. The record evidence belies CFA's assertions. Upon evaluation of the totality of the circumstances, Commerce found that (1) the timing of the sale does not indicate that it was not *bona fide*; (2) record evidence indicates that the price and quantity of the sale are commercially reasonable; (3) Co May did not incur any extraordinary expenses arising from the transaction; (4) Co May's unaffiliated U.S. customer provided documentation consistent with its statement that it made a profit on the resale of subject merchandise; and (5) record evidence indicates that the sale was made between Co May and its unaffiliated U.S. customer at arm's-length. For those reasons, Commerce found Co May's single sale to be *bona fide*.

Second, the record supports Commerce's determination that Co May's price was not aberrational, Co May's goods were resold at profit in the U.S., and there is no basis to call into question the sales price between Co May's customer and resale customers. Commerce properly considered all of the evidence, including party comments, and its finding of a *bona fide* sale should be sustained.

## ARGUMENT

### I.    Standard Of Review

This court sustains "'any determination, finding, or conclusion found' by Commerce unless it is 'unsupported by substantial evidence upon the record, or otherwise not in accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)); *see also United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). Substantial evidence is such "evidence that a reasonable mind might accept as adequate to support a conclusion." *Canadian Solar Inc. v. United States*, 23 F. 4th 1372, 1378 (Fed. Cir.

2022).  When assessing whether Commerce's factual findings are supported by substantial evidence, this Court looks to "the record as a whole."  *Id.*

Further, substantial evidence may be "less than the weight of the evidence," and the possibility of drawing two inconsistent conclusions from evidence upon the record does not render Commerce's findings unsupported by substantial evidence.  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).  A party disputing Commerce's determination as unsupported by substantial evidence thus "has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006), and the Court will sustain Commerce's determinations if they are reasonable and supported by the record as a whole, even if some evidence detracts from them.  *See Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

## II.    **Commerce Properly Determined That Co May's Single Sale Was *Bona Fide***

### A.    **Legal Framework**

In determining whether the U.S. sales of an exporter or producer made during the period covered by review were *bona fide*, Commerce shall consider the circumstances surrounding sales, such as (1) the sales' prices, (2) whether the sales were made in commercial quantities, (3) the timing of the sales, (4) the expenses arising from the sales, (5) whether the goods were sold at a profit in the United States, (6) whether the sales were made on an arms-length basis, and (7) any other factor determined relevant as to whether the sales are likely to be typical of those that the new shipper will make after the review.  19 U.S.C. § 1675(a)(2)(B)(iv).

Commerce evaluates the *bona fide* nature of the transaction based on the totality of the circumstances.  *Tianjin Tiancheng Pharma. Co. v. United States*, 366 F. Supp. 2d 1246, 1249 (Ct. Int'l Trade 2005); *see also Hebei New Donghua Amino Acid Co. v. United States*, 374 F.

9

Supp. 2d 1333, 1338 (Ct. Int'l Trade 2005).  Commerce will use "any factor which indicates that the sale under consideration is not likely to be typical of those which the producer will make in the future is relevant" and "the weight given to each factor investigated will depend on the circumstances surrounding the sale." *Tianjin Tiancheng*, 366 F. Supp. 2d at 1250, 1263.  In determining whether a company's sales are *bona fide*, Commerce weighs the totality of the circumstances, which include such factors as whether the goods were resold at profit.  *See Jinxiang Yuanxin Import & Export Co., Ltd. v. United States,* 71 F. Supp. 3d 1338, 1354 (Ct. Int'l Trade 2015).

In determining individual rates for a company, Commerce will exclude sales that are not *bona fide*.  *Tianjin Tiancheng*, 366 F. Supp. 2d at 1249.  For example, Commerce will find a transaction is not *bona fide* if the transaction is commercially unreasonable.  *Windmill Int'l PTE Ltd. v. United States*, 193 F. Supp. 2d 1301, 1313 (Ct. Int'l Trade 2002).  A commercially unreasonable transaction is atypical or unrepresentative of normal business practice.  *See id.* at 1312 (defining a non-*bona fide* sale as "unrepresentative or extremely distortive") (cleaned up).  "Commerce makes this determination so that a producer does not unfairly benefit from an atypical sale to obtain a lower dumping margin than the producer's usual commercial practice would dictate."  *Allied Tube and Conduit Corp. v. United States*, 31 C.I.T. 1090, 1092 (2007).

Any weighted-average dumping margin determined in a NSR shall be solely based on *bona fide* sales during the POR.  *See* 19 U.S.C. § 1675(a)(2)(B)(iv).  When the respondent under review makes only one sale and Commerce finds the transaction atypical, "exclusion of that sale as non-*bona fide* necessarily must end the review, as no data will remain on the export price side of Commerce's antidumping duty calculation."  *Tianjin Tiancheng*, 366 F. Supp. 2d at 1249.  Moreover, "'a single sale transaction may warrant further scrutiny because there are fewer

transactions from which to draw inferences about the exporter or producer's selling practices.'" *Dalian Hualing Wood Co., Ltd. v. United States*, 675 F. Supp. 3d 1294, 1303 (Ct. Int'l Trade 2023) (quoting *Novolipetsk Steel Pub. Joint Stock Co. v. United States*, 483 F. Supp. 3d 1281, 1288 (Ct. Int'l Trade 2020)).  However, a single sale does not necessarily indicate a non-*bona fide* sale.  *See Windmill Int'l*, 193 F. Supp. 2d at 1313.

**B.    Substantial Evidence Supports Commerce's Finding That Co May's Sale Was *Bona Fide***

Substantial evidence supports Commerce's determination that Co May's sale was *bona fide*.  *See generally* IDM.  Commerce considered the totality of the circumstances to determine whether Co May's sale was commercially reasonable and its findings are supported by substantial evidence.  *See* Preliminary Results Analysis Memo. (Jan. 17, 2024) (P.R. 182; C.R. 374), unchanged in *Preliminary Results*, 89 Fed. Reg. 5,862.  Commerce compared the sale price and quantity with contemporaneous data and Co May's history of fish fillet sales, and the profitability of the sale for both Co May and its customer [ ▮ ].  *See* Preliminary Results Analysis Memo. at 1-2; PDM at 4; *Bona Fide*-Entered Value Analysis Data (Jan. 23, 2024) (C.R. 378); Placement of U.S. Sales Data on the Record Memo. (Oct. 6, 2023) (P.R. 157; C.R. 370). Commerce found that the sale price and quantity was typical considering the commercial realities surrounding the sale, and that the sale was profitable for both Co May and its customer [ ▮ ].  *See id.*

Because substantial evidence supports Commerce's *bona fide* analysis, the Court should sustain Commerce's determination.

**C.    CFA's Various Arguments Are Meritless**

CFA makes numerous meritless arguments opposing Commerce's determination that Co May's single sale was *bona fide*.  *See generally* CFA Br.  Generally, CFA contends that

Commerce's findings are not supported by substantial evidence. *See e.g.*, *id.* at 17. CFA also challenges Commerce's determination that Co May's price of the sale under review was *bona fide*, Co May's goods were not resold at profit in the U.S., and there was no affiliation between [█████] and its resale customers. *See id.* at 11-13. Finally, CFA argues that Co May's sale was not reflective of normal commercial practices and likely future sales and that Co May's goods were not resold by U.S. customer [█████] for profit. *See id.*

As we explain below, CFA's arguments are meritless because substantial evidence supports Commerce's conclusion that Co May's sale was not atypical, and that the surrounding circumstances suggest that Co May's goods were resold at profit in the U.S. by Co May's customer [█████]. *See generally* IDM.

> **1.      Substantial Evidence Supports Commerce's Determination Regarding The Typicality Of Co May's Price**

Commerce determined that Co May's sale price was not atypical, and this finding is supported by substantial evidence. IDM at 9. The total entered value of Co May's sales was [█████████] and the net quantity was [████████] kilograms. *See* Preliminary Results Analysis Memo. at 1; Data Pertaining to Co May FOP Database (Jan. 23, 2024) (C.R. 377); Data Pertaining to Co May U.S. Sales Database (Jan. 23, 2024) (C.R. 376). Co May's unit price was [█████] per kilogram. Commerce found that Co May's price was commercially reasonable because it fell in the center of the distribution of the U.S. prices of the mandatory respondents [██████████████████████████████████████]. Preliminary Results Analysis Memo. at 2.

Next, CFA challenges the typicality of Co May's sale at a price of [█████] per kilogram, by stating that it was a [██████████████] price than it charged for frozen *pangasius* fillets sold in other markets during the NSR period. *See* CFA Br. at 15. However, as Commerce

12

explained in the final results, there is no requirement that the U.S. sales price must be the same as a company's price for its sales to other markets.  *See* IDM at 8.  Moreover, the Court has found that labeling a price as aberrational is unreasonable without considering the average unit values (AUV) prevailing at the time of sale.  *Shijiazhuang Goodman Trading Co., Ltd. v. United States*, 172 F. Supp. 3d 1363, 1376 (Ct. Int'l Trade 2016) (finding that Commerce's conclusion that prices were aberrational compared to the AUV for the entire POR, without considering AUVs prevailing at the time of sale, was an unreasonable price analysis for determining a *bona fide* sale).

In the current case, Commerce found that Co May's price was commercially reasonable because it fell in the center of the distribution of the U.S. prices to mandatory respondents in the POR-adjacent administrative review.  *See* AR Respondents' U.S. Sales Data (June 23, 2024) (C.R. 409); IDM at 9.  At the time of the NSR preliminary results, the data from the POR-adjacent administrative review was the most contemporaneous respondent database available. The initial data submission for the August 1, 2022, through July 31, 2023, POR was not available until May/June of 2024.  Therefore, Commerce deemed it appropriate to use data from the POR-adjacent administrative review (covering August 1, 2022, through July 31, 2023) for the price analysis.  The comparison between Co May's price and U.S. prices to mandatory respondents showed that the price was consistent with prices charged by other exporters of fish fillets from Vietnam in a proximate period to the time of sale.  *See* IDM at 5.  Regardless, the Court has held that a determination that a sale was not *bona fide* may not solely rest on an atypically high price, and that additional evidence must be considered, *Tianjin Tiancheng,* 366 F. Supp. 2d at 1263. Commerce followed that instruction.  *See* IDM at 5.

Next, CFA argues that the resale price of Co May's customer [███] was higher priced than the average price of the mandatory respondents' combined sales. *See* CFA Br. at 14. However, 19 U.S.C. § 1675(a)(2)(B)(iv) states that for determinations based on *bona fide* sales, "any weighted average dumping margin or individual countervailing duty rate determined for an exporter or producer in a review . . . shall be based solely on the bona fide United States sales of an exporter or producer . . . made during the period covered by the review." When considering the price of such sales under section 1675(a)(2)(B)(iv)(I), Commerce considers and compares the sales price of an exporter or producer to an unaffiliated U.S. customer, not the U.S. customer's sales to another party. Therefore, the resale price of Co May's customer [███] is irrelevant to Commerce's *bona fide* analysis consideration.

## 2. Substantial Evidence Supports Commerce's Conclusion Regarding The Profitability Of Resales

CFA next argues that if Commerce had considered cash deposits in its profitability analysis, Commerce would have found that Co May's goods were not resold at profit in the U.S. *See* CFA Br. 20. CFA is incorrect.

Reselling profitability is indicative of whether the sale under review is similar to other U.S. sales for the subject merchandise, as well as whether the respondent may be able to sell subject merchandise in the future at similar pricing levels. *See* 19 U.S.C. § 1675(a)(2)(B)(iv). Commerce correctly ignored cash deposits paid at entry when accounting for profit because Commerce does not adjust for cash deposit rates when calculating net prices in its price comparisons. *See* IDM at 5. Rather, Commerce maintains that antidumping duties and cash deposits of antidumping duties are not expenses that should be deducted from U.S. price. *See Xanthan Gum from the People's Republic of China: Rescission of 2014-2015 Antidumping Duty New Shipper Review*, 81 Fed. Reg. 56,586 (Dep't of Commerce Aug. 22, 2016), and

accompanying IDM at Comment 2.  Because cash deposits are estimates of an uncertain duty

liability to be assessed in the future, they should not be considered as "generally incurred" or

"for the account of the producer or the exporter" because their intangibility makes it

unreasonable to account them into price.  *See Xanthan Gum*, 81 Fed. Reg. 56,586.

CFA additionally argues that Commerce's profitability analysis was undermined by

incomplete non-duty expenses that [████] reported.  *See* CFA Br. at 21.  Specifically, CFA

argues that [████]'s reporting of a lump sum for such expenses equal to [██] percent of resale

value and asserts that this value was not supported by documentary evidence.  *Id.*  For example,

in its administrative case brief, CFA claimed that it was "highly specious" that [████████████

████████████████████████████████████████████████████] yet there is no

information showing that [████████████████████████████████████

████████████████].  CFA Admin. Case Br. at 9.  However, Commerce found that the

unaffiliated customer appropriately provided information in accordance with the requirements

that Commerce requested in its importer questionnaire.  *See* Commerce's Unaffiliated Customer

Supplemental Questionnaire (Jan. 31, 2024) (P.R. 187; C.R. 380).  The importer questionnaire

explicitly contemplated that SG&A expense fields may be combined by the customer.  *Id.*

Indeed, 19 U.S.C. § 1677m(a) requires respondents to cooperate by providing the

information requested by the administering authority in a timely manner and in the form and

manner requested and to provide supporting documentation.  The unaffiliated customer complied

with Commerce's request that the U.S. customer report its SG&A expenses and Commerce

allowed it to report these expenses as an aggregate field.  *See* Co May Unaffiliated Supplier

Supplemental Questionnaire Resp. (Feb. 8, 2024) at Exhibit 1, Attachment A (P.R. 187; C.R.

380).  Therefore, [█████] aggregation of SG&A expenses is consistent with instructions in Commerce's questionnaire, and CFA's claim otherwise is meritless.

Next, CFA argues that record evidence undermines the completeness and accuracy of the reported SG&A figure.  *See* CFA Br. at 22.  However, there is no evidence that the unaffiliated customer failed to report any of the expenses associated with the resale of Co May's fish, and Commerce accepted the reported figure and did not ask the customer to further provide additional information in its request for information.  *See* IDM at 6.  The Secretary of Commerce is entrusted with responsibility for administering the antidumping law, and the United States Court of Appeals for the Federal Circuit has held that the Secretary does not act improperly in considering a particular "quantum of evidence to be adequate."  *Smith-Corona Grp. v. United States*, 713 F.2d 1568, 1581-82 (Fed. Cir. 1983).  In the current case, Commerce was satisfied with supporting documentation and accepted the customer's reported figure as accurate.  *See* IDM at 6.

Thus, despite CFA's arguments concerning cash deposits and SG&A expenses, substantial evidence supports Commerce's determination that the transaction was a profitable one for both Co May and its customer [████].  *See generally* Co May Unaffiliated Supplier Supplemental Questionnaire Resp.  In determining whether a company's sales are *bona fide*, Commerce weighs the totality of the circumstances, which include such factors as whether the goods were resold at profit.  *See Jinxiang Yuanxin Import & Export Co..*, 71 F. Supp. 3d at 1338, 1354.  Because Co May realized a profit, and Co May's customer, [████], was also able to make a profit, substantial evidence supported Commerce's determination that the sale price was commercially reasonable. *See* IDM at 6.

**3.    Substantial Evidence Supports Commerce's Conclusion Regarding The Relationship Between Co May's Customer And The Resale Customers**

Commerce found that the record does not demonstrate that Co May's customer [████] and the resale customers are affiliated.  IDM at 7-8.  In their administrative brief, CFA raised this issue of affiliated parties under an "arm's length transaction" analysis.  CFA Admin. Case Br. at 12.  Now, CFA raises this claim as one of the unspecified factors, or, "any other factor {that Commerce} determines relevant as to whether {the} sales are, or are not, likely to be typical of those the {new shipper} will make after the completion of the review."  19 U.S.C. § 1675(a)(2)(B)(iv).  Specifically, CFA argues that an affiliated relationship existed between [████] and [████████] resale customers, purporting that they share an address and [████████████].  *See* CFA Br. at 23.

Because CFA did not make this specific argument before Commerce, the Court should determine that CFA is now precluded from making this argument.  *See* 19 C.F.R. § 351.309(c)(2) (stating that a party's case brief to Commerce "must present all arguments that continue in the submitter's view to be relevant to {Commerce's} . . . final results.");  *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (recognizing that the exhaustion requirement protects administrative agency authority and promotes judicial efficiency).  Indeed, the Federal Circuit has held that a party's obligation to exhaust its administrative remedies in proceedings before Commerce applies both to broad issues and arguments related to those issues.  *See Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (disagreeing with contention that courts can consider new arguments so long as the general issue was raised at the agency

level).  Exceptions to the exhaustion requirement are limited,[2] as such the Court "generally takes a 'strict view' of the requirement that parties exhaust their administrative remedies before the Department of Commerce in trade cases."  *Corus Staal*, 502 F.3d at 1379.

In any event, 19 U.S.C. § 1675(a)(2)(B)(iv) provides that Commerce must consider whether the sale(s) "of an exporter or producer made during the period covered by review were *bona fide*."  The arm's length provision requires Commerce to determine affiliation as it relates to sale(s) between the producer/exporter and its U.S. customer; analysis of an alleged affiliation between the U. S. customer [█████] and its downstream customers is outside of the *bona fide* consideration required by the statute.  19 U.S.C. § 1675(a)(2)(B)(iv).  As Commerce explained in the final results, nothing on the record indicates affiliation between Co May and its U.S. customer, and no party argues otherwise.  IDM at 8.

Regardless, CFA's argument that there is affiliation between [█████] and its downstream customers is unfounded.  In response to CFA's affiliation claims, Co May provided documentation regarding the owners of its U.S. unaffiliated customer, consistent with the customer's own statement provided on the record.  *See* Co May Unaffiliated Supplier Supplemental Questionnaire Resp. at Exhibit 1.  CFA provided two Wikipedia-style articles in rebuttal of Co May's documentation.  *See* CFA's Feb. 20, 2024 Submission at RFI-9A and RFI-9B (P.R. 191; C.R. 382).  The Court has previously recognized that Commerce has rejected Wikipedia as evidence in cases appealed to this Court.  *See Shandong Rongxin Imp. & Exp. Co. v. United States*, 203 F. Supp. 3d 1327, 1342 (Ct. Int'l Trade 2017) ("Commerce discounted the

---

[2] None of the exceptions to the exhaustion requirement are applicable in this case.  The exceptions include futility, pure question of law, lack of timely access to the confidential record, no administrative procedure to exhaust, or new interpretation from an intervening judicial decision.  *See Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013).

Wikipedia article because of its vagueness and lack of an authoritative citation . . . The court further notes that . . . Wikipedia, is often an unreliable evidentiary source." (citing various courts' decisions that recognized the dangers of citing to Wikipedia articles as legally probative evidence and discussing the "open source editorial policy" of Wikipedia that renders Wikipedia articles "unreliable" and "easily vandalized")).  Furthermore, in *Zhejiang Amerisun Technology Co., Ltd., v. United States*, the Court found it "remarkable" that Commerce would cite to Wikipedia as evidence and that Commerce's heavy reliance on Wikipedia articles was an indication of "weakness" in Commerce's determination.  687 F. Supp. 3d 1282, 1292 (Ct. Int'l Trade 2024).  Therefore, Commerce appropriately did not rely on Wikipedia articles and did not find a basis to conclude that the customer was affiliated with the downstream customer.  *See* IDM at 8.

Additionally, Commerce found that [███] also resold Co May's fish fillets to an additional customer, with a different mailing address.  *See id.* at 8.  Therefore, substantial evidence supports Commerce's determination that no evidence suggests that the transaction between [███] and its downstream customers was not arms-length.  *See id.* at 7-8.

## CONCLUSION

For these reasons, we respectfully request that the Court deny plaintiff's motion, sustain Commerce's final results, and enter judgment for the United States.

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

19

OF COUNSEL:                          /s/ Kara M. Westercamp
K. GARRETT KAYS                      KARA M. WESTERCAMP
Attorney                             Senior Trial Attorney
U.S. Department of Commerce          United States Department of Justice
Office of the Chief Counsel for Trade   Civil Division
   Enforcement and Compliance      Commercial Litigation Branch
1401 Constitution Avenue, NW         P.O. Box 480
Washington, D.C. 20230               Ben Franklin Station
                                     Washington, D.C. 20044
                                     (202) 305-7571
                                     Email: kara.m.westercamp@usdoj.gov

February 12, 2025                    *Attorneys for Defendant*

**<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that the foregoing brief complies with the Rules of this Court, the Court's

Standard Chamber Procedures, and the Court's scheduling order in that it contains 5,582 words,

including text, footnotes, and headings.

<u>/s/Kara M. Westercamp</u>

KARA M. WESTERCAMP

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:    THE HONORABLE JANE A. RESTANI, SENIOR JUDGE**

_____ )
CATFISH FARMERS OF AMERICA, *et al.*,)
                    Plaintiffs,    )
            v.            )        Court No. 24-00126
                        )
UNITED STATES,            )
                    Defendant.    )
_____ )

**PROPOSED ORDER**

Upon consideration of the plaintiffs' motion for judgment upon the agency record,

defendant's response, and all other pertinent papers, it is hereby

ORDERED that the plaintiffs' motion is denied; and it is further

ORDERED that judgment is entered for the United States.

_____
JANE A. RESTANI, SENIOR JUDGE

Dated: _____
    New York, NY